FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

'00 APR 27 PH 2: ⁻⁶

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JOE F. MCGEE and WILLICE LASHLEY, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] CV-97-N-2335-W |
| vs. | ] |
| | ] |
| UNITED STATES DEPARTMENT OF AGRICULTURE FARM SERVICES AGENCY, et al., | ] |
| | ] |
| Defendant(s). | ] |

ENTERED

APR 2 7 2000

### Memorandum of Opinion

## I.    Introduction.

In this action, Joe F. McGee ("McGee") and Willice Lashley ("Lashley") bring suit against Robert W. Springer ("Springer"), John Day ("Day"), Prewitt Mauldin ("Mauldin"), Jean Petrey ("Petrey"), James Dawson ("Dawson"), Wardell Townsend ("Townsend"), and John Stencel ("Stencel") pursuant to 42 U.S.C. §§ 1985(1) and (3).  At the present time, two claims remain before the court.[1]  First, under 42 U.S.C. § 1985(1) the defendants allegedly conspired to prevent plaintiffs by intimidation or threats from holding the offices to which plaintiffs had been elected and from discharging the duties of such offices.[2]  Second, under

---

[1] The court's April 7, 1999, Order dismissed the plaintiffs' *Bivens* actions; affirmed the agency decision insofar as it was not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law; dismissed the plaintiffs' claims under 42 U.S.C. §§ 1981 and 1985(3) against the USDA and FSA and against the individual defendants in their official capacities; dismissed the plaintiffs' claims under 42 U.S.C. § 1981 and § 1985(3) against John W. Chott, Jr.; and dismissed the plaintiffs' claims under Alabama law. On May 20, 1999, the court granted the defendants' second motion to dismiss the plaintiffs' claims arising under 42 U.S.C. § 1981.

[2] As an initial matter, the court is compelled to address the rather confounding posture of the plaintiffs' claim brought pursuant to 42 U.S.C. § 1985(1). This claim was not asserted at the time of the filing of the original complaint. In conference on July 20, 1999, the Court orally allowed the plaintiffs to amend the complaint and add the § 1985(1) claim. However, a review of the record and the court's docket sheet reveals that an amended



42 U.S.C. § 1985(3), the plaintiffs allege that the defendants conspired to deprive plaintiffs of equal protection of the laws and equal privileges and immunities under the law in that plaintiffs were injured and deprived of their right or privilege as a citizen of the United States to hold an elected federal office. Underlying both claims is the position that the complained of actions were based on plaintiffs' race and carried out to effectuate the defendants' desire to have black persons hold the plaintiffs' elected offices.

The action is now before the court on motion of the federal defendants for summary judgment that was filed on October 18, 1999 [Document 66], and, pursuant to an order of the court, supplemented on January 12, 2000. [Document 75]. The motion has been adequately briefed and was, pursuant to the December 22, 1999, order [Document 73], submitted for decision on February 15, 2000. Upon due consideration, the motion for summary judgment will be granted and the action will be dismissed with prejudice.

**II.    Facts.**

This case arises from the plaintiffs being suspended, and eventually, permanently barred from future service and employment as Farm Service Agency committee members or employees of a Farm Service Agency County Committee. In the April 7, 1999, memorandum of opinion concerning the defendants' motion to dismiss or in the alternative motion for summary judgment, the court expended a substantial amount of time and effort detailing the underlying facts of the present matter. Because the evidentiary record has not

---

complaint was never filed with the court. Oddly, despite the absence of an amended complaint, the defendants, in their motion for summary judgment, impliedly concede that a claim under § 1985(1) is asserted but argue that the record is void of significant evidence to support the claim. As best the court can tell, the first time the plaintiffs actually stated a claim under § 1985(1) was when they submitted their proposed pre-trial order. Accordingly, the court entertains some doubt about whether this claim has been properly placed before it.

been supplemented by either party since the previous opinion, for purposes of the pending motion, the court adopts its previous statement of facts.

## III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"'--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an "affirmative

3

showing" that crucial evidence is missing "by reference to any combination of the following: pleadings; deposition testimony of a party or its witnesses; affidavits; responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38 (11th Cir.1991).

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254;

5

*Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.    Discussion.

In pertinent part, 42 U.S.C. § 1985(1) prohibits two or more persons in any State or Territory from conspiring to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof. 42 U.S.C. § 1985(3) states that if "two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . ., the party so injured or deprived may have an action for the recovery of damages." *See Lyes v. City of Riviera Beach Fla.*, 166 F.3d 1332, 1336 (11th Cir. 1999).

### A.    Conspiracy.

An action brought under §§ 1985(1) or (3) requires the existence of a conspiracy. "It is classic hornbook law that the first element of any conspiracy claim is an agreement, some meeting of the minds, focused on an impermissible purpose." *Housing Investors v. City of Clanton, Ala., et al.,* No. Civ. A. 98-T-54-N, 1999 WL 969829, at *8 (M.D. Ala. Oct. 14, 1999); *Byrd v. Clark,* 783 F.2d 1002, 1008 (11th Cir. 1986) *abrogation recognized on other grounds*

6

*by Nolin v. Isbell*, 2000 WL 313325 (11ᵗʰ Cir. March 28, 2000) (holding that summary judgment was appropriate where there was no evidence of concerted action, nor was there any fact from which a conspiracy could be inferred). Generally, in addition to the presence of a meeting of the minds to achieve an illegal objective, a successful conspiracy claim requires an overt act in furtherance of the impermissible objective and a resulting injury to the plaintiff. *See Bivens Gardens Office Bldg., Inc. v. Barnett Banks Inc.,* 140 F.3d 898, 912 (11ᵗʰ Cir. 1998). Although a prima face case of conspiracy may rely on circumstantial evidence, there must be some indication that the defendants were acting, in some sense, in concert. *Burrell v. Board of Trustees of GA. Military College*, 970 F.2d 785, 789 (11ᵗʰ Cir. 1992).

However, vague, unsubstantiated, conclusory, and general allegations of conspiracy will not suffice to get the plaintiffs past summary judgment. *Kearson v. Southern Bell Telephone & Telegraph Co.*, 763 F.2d 405, 407 (11th Cir. 1985); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).

As a threshold matter, we must examine whether there is sufficient evidence in which a jury could reasonably determine that a conspiracy existed. The defendants contend that the record is void of any evidence of a conspiracy. In response, the plaintiffs' argument, in its entirety, is as follows:

> Defendant Springer is the key actor in the conspiracy. It was Mr. Springer who was acknowledged to have had direct meetings and conversations with George Hall. It was defendant Springer who met directly with black farmers to urge them to participate in the election. It was defendant Springer who directed the reported investigations. It was defendant Springer

7

who attended meetings in Washington with defendant Stengall[3] and others to orchestrate the final investigation which resulted in a recommendation of discrimination. It was defendant Springer who met with the State Committee defendants as they deliberated and decided to remove plaintiffs from office. Given defendant Springer's express assurance to George Hall that there would be minority representation on the Greene/Sumter County COC, there is certainly sufficient evidence of a conspiracy among the defendants to remove plaintiffs from office for racial reasons.

(Plaintiffs' Opposition to Summary Judgment pp. 37-38).[4] For purposes of clarity, the court will separately address each relationship in which the plaintiffs appear to base their conspiracy claims.

## 1.    Robert Springer, George Hall and "black farmers."

A question of fact as to the existence of a conspiracy is not created by making the general allegation, with no evidentiary reference, that Springer and Hall "had meetings and conversations." Even giving the plaintiffs every reasonable inference this vague allegation fails to indicate the possible presence of an agreement between the two focused on any impermissible purpose. While the court is neither obligated to speculate as to which part of the record the plaintiffs rely, nor required to search for facts that might support the plaintiffs' claim, it has undertaken an independent review of the evidence to ascertain whether it indicates a question of fact as to a conspiracy between Springer and Hall.

_____

[3] The court assumes the plaintiff is referring to defendant John Stencel.

[4] The court notes that in their "argument against summary judgment," the plaintiffs failed to cite to the record or the additional statement of facts. Moreover, they failed to cite to any legal precedent concerning § 1985 claims.

8

Upon such review, the court fails to ascertain the presence of any significant evidence that Hall and Springer had a meeting of the minds, focused on an impermissible purpose. For example, one of the "meetings" described by the plaintiffs involved Hall writing Springer to request that he be named as the Minority Advisor for Greene County. However, Springer expressly denied Hall's request. Another instance raised by the plaintiffs concerns Springer's statement to Hall that he was committed to ensuring *equal* representation on the Greene County Committee. Again, this general statement does not indicate any agreement by Hall and Springer, nor does it suggest an unlawful purpose. Accordingly, the plaintiffs have failed to create a genuine issue of material fact as to the existence of a conspiracy between Hall and Springer.

The plaintiffs also contend that a conspiracy can be inferred by the fact that Springer met directly with "black farmers" to urge them to participate in the election.[5] Again, without signficant aid from the plaintiffs, the court examines the roles played by the "black farmers" in the claimed conspiracy. The fact that Springer may have encouraged "black farmers" to vote in elections for membership on the Greene County Committee is indicative of little, if anything. Surely, the plaintiffs do not suggest that garnering political support or encouraging voters, black or white, to participate in the electoral process is evidence of conspiracy. It may be evidence of an agreement, but hardly of an unlawful purpose.

Additionally, there is no significant evidence which even remotely suggests that the "black farmers" played any role in the investigations and termination of the plaintiffs – the

---

[5] Such argument is somewhat perplexing in light of the undisputed evidence that the plaintiffs were eventually elected with strong support from many black farmers.

9

actions which lie at the heart of the plaintiffs' claims. Moreover, with regard to Hall, the evidence is only that he filed a complaint that he was discriminatorily treated. Consequently, the plaintiffs' conspriacy claims may not rest on any conduct attributable to George Hall or the "black farmers."

### 2.    **Robert Springer and John Stencel.**

That Springer and Stencel may have met, without more, does not suggest that they conspired to orchestrate the investigation which resulted in a recommendation of discrimination. Nevertheless, despite the absence of any citation to the evidentiary record, the court undertook its own independent review of the evidence concerning the relationship between these two defendants. After such review, it appears that the plaintiffs claims center upon the defendants' directives to Willie Cook and Jean Freeman to conduct investigations into George Hall's complaint. Significant evidence certainly exists that Springer and Stencil may have reached an understanding to cause the investigations to be done, but there is no evidence of an improper motive, purpose, or goal. George Hall had filed a complaint charging the plaintiffs with discriminating against him in the manner in which they handled his claim for disaster payments. They, of course, had a duty to investigate Hall's charges. Accordingly, there is no evidence of any improper motive.

Additionally, regarding the Cook investigation, the court finds Springer's testimony before Hearing Officer Chott about his meeting with Stencel instructive as to the conspiracy issue.

> Q:    (Mr. Mitchell) Did you request Mr. Cook to conduct an investigation of Mr. Hall's complaint, his discrimination complaint?

10

> A: (Mr. Springer) I believe that meeting focused around
> what is the status of it and whether or not they were –
> where they were on their investigation. And the fact with
> the notoriety and other issues, that it needed to be
> resolved.
>
> ....
>
> A: A long period of time had lapsed since the time that the
> complaint had been filed, and I was very concerned
> about the fact that we weren't hearing anything.

(Transcript of hearing before Chott p. 103-104). Even giving the plaintiffs every reasonable inference, the court finds that the foregoing testimony demonstrates that the motive behind the investigation was not to further some impermissible purpose, but rather to expedite the investigative process. Further examining the record, the court finds no other evidence from which one could infer that the Cook investigation was an attempt to prevent the plaintiffs from holding and discharging the duties of their office or to deprive them of equal protection of the laws and equal privileges and immunities under the law.[6]

As for the Freeman investigation, the court's review of the record has failed to discover any significant evidence from which one could infer that it was the result of some improper motive on the part of Springer and Stencel. First, the record is not entirely clear as to the difference between the Cook and Freeman investigations. In fact, a plain reading of Freeman's testimony indicates that after Springer and Stencel ordered Cook to investigate the Hall complaint, Cook then delegated Freeman the authority to assist in the investigation. (Transcript of hearing before Chott pp. 14, 30). Consequently, the court sees

---

[6]The court notes that in their responsive submission the plaintiffs do not allege that Cook or Freeman were possible conspirators.

11

little, if any, difference between the situation with Cook, which was not based upon improper motives, and the facts surrounding Freeman.  Moreover, the court has some concern as to whether Springer and Stencel had any part in Freeman's role in the investigation.

Based on the foregoing, the court finds no genuine issue of material fact as to the existence of a conspiracy between Springer and Stencel.  Accordingly, this being the only mention of Stencel's role in a conspiracy, the court finds that he is entitled to summary judgment as to all the plaintiffs' claims.

### 3.    Robert Springer and State Committee Defendants.

There is no genuine issue of material fact as to the existence of a conspiracy between any of the defendants and the "state committee defendants."[7] A review of the plaintiffs' responsive brief and statement of facts fails to substantiate the allegation that Springer met with the State Committee defendants as they deliberated and decided to remove the plaintiffs from office. (*See* Plaintiffs' Opposition to Summary Judgment pp. 37-38). A review of the statement of facts indicates: (1) a state executive meeting took place and the plaintiffs were suspended (Plaintiffs' Statement of Facts ¶ 124); (2) Chairman Deman's basis for the decision (Plaintiffs' Statement of Facts ¶ 126); (3) Springer's reasoning behind the suspension (Plaintiffs' Statement of Facts ¶ 127); and (4) the plaintiffs were removed from office and replaced by their election opponents (Plaintiffs' Statement

---

[7]Although in their responsive brief the plaintiffs do not name the "state committee defendants" individually, they are James Dawson, John Day, Preuit Mauldin, and Jean Petrey. However, Donald Denman, the only state committee member explicitly mentioned in the plaintiffs' responsive submission is not a defendant. (*See* Plaintiffs' Opposition to Summary Judgment pp.30-31).

of Facts ¶ 129). However, the plaintiffs' submission is void of any significant evidence which indicates that there was any actual interaction between Springer and the committee when the decision to remove the plaintiffs was made.[8] Asserting that he met with them when a decision was made, without any citation to the applicable record or presenting in its submission circumstantial evidence of such interaction, does not demonstrate a genuine issue of fact as to a concerted action which survives summary judgment.

Accordingly, because the plaintiffs may not sustain its claim on this vague allegation of a conspiracy, summary judgment will be granted in favor of the state committee defendants.  Moreover, this being the last area where we see Springer mentioned as a conspirator, coupled with the court's previous findings that he was not part of any other conspiracy, he is also entitled to summary judgment as to all of the plaintiffs' claims.

### 4.    **Wardell Townsend**.

As for defendant Wardell Townsend, there is no mention of his alleged role in a conspiracy in the plaintiffs' responsive submission. (*See* Plaintiffs' Opposition to Summary Judgment pp. 37-38). While the court recognizes that direct evidence of a conspiracy is not necessary, in the absence of assistance from the plaintiffs, it will not theorize concerning the plaintiffs' concerning their view of Townsend's role in this alleged conspiracy. Accordingly, due to the overall vague allegations of a conspiracy presented in the plaintiffs' brief, which fails to even mention Townsend by name, an issue of fact is not created as to

---

[8]The administrative record indicates that Springer was present at the state committee meeting in which the decision to remove plaintiffs was made. However, there is no evidence that he participated in the deliberations or interacted with the members before the vote. (Transcript of Administrative Proceedings p. 112).

his alleged role in a conspiracy. Thus, the court finds that he is entitled to summary judgment as to both the § 1985(1) and (3) claims.

**B.     42 U.S.C. § 1985(1).**

The court has noted the unusual posture of the plaintiffs' claim under § 1985(1). Without some aid from them, the court is left to wonder just what the claim is. However, after thoroughly reviewing the record, the court discerns that the claims are likely based upon the first clause of § 1985(1) which concerns conspiracies to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof.

The court, having done its own review of the record, can find no evidence which would create a genuine issue that force, intimidation, or threats were used against McGee and Lashley.[9] While in some circumstances an investigation might correspond to a threat, as previously stated, there is no significant evidence which might indicate that the investigations herein were threatening in nature, or were initiated for an improper purpose. Accordingly, even if the plaintiffs had sufficiently alleged a § 1985(1) claim and met the conspiracy element, they have not created a genuine issue of fact as to the existence of tactics on the defendants' part which might fall under the purview of forceful, intimidating, or threatening conduct.

**C.     *Stimpson v. City of Tuscaloosa.***

---

[9] The court notes there are courts which have held that portions of § 1985(1) (other than the first one) do not require force, intimidation, or threats on the part of the conspirators. *See Stern v. United States Gypsum, Inc., et al.*, 547 F.2d 1329 (7th Cir. 1977). The court does not disagree with these holdings. However, as best the court can tell, in the absence of help from the plaintiffs, their claim is based on this first portion ("If two or more persons is any State or Territory conspire to prevent by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or discharging any duties thereof ...").

14

Assuming, *arguendo,* that a conspiracy could be established, the plaintiffs, for

summary judgment purposes, fail to establish the other requisite elements of their § 1985(3)

claims. Under § 1985(3), a plaintiff must establish the following four elements:

(1)   a conspiracy
(2)   for the purpose of depriving, either directly or indirectly, any person or class of
      persons of the equal protection of the laws, or of equal privileges and immunities
      under the laws; and
(3)   an act in furtherance of the conspiracy
(4)   whereby a person is either injured in his person or property or deprived of any right
      or privilege of a citizen of the United States.

*United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828-29 (1983).

Additionally, in order to keep § 1985(3) from becoming a general federal tort law, the

Supreme Court has held that plaintiffs must demonstrate that there is some "racial or

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971). To survive a motion for summary

judgment, the plaintiff must produce evidence of class animus "that could not be

characterized as insubstantial." *See Faucher v. Rodziewicz,* 891 F.2d 864, 871 (11th Cir.

1990). Invidiously discriminatory animus "implies more than intent as volition or intent as

awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed

a particular course of action at least in part because of, not merely in spite of, its adverse

effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263,

271-72 (1993).[10]

_____

[10] Racially discriminatory animus is not a required element of an action under § 1985(1). *See Stern v.
United States Gypsum, Inc., et al.,* 547 F.2d 1329, 1340 (7th Cir. 1977).

15

The defendants contend that there is a lack of evidence in the record to sufficiently indicate racial animus on their part. The plaintiffs respond that a question of fact as to the racial animus element is created based upon the following: (1) Springer's statements that he was committed to ensuring equal representation and that the USDA wanted more minority participation on the County Committee; (2) encouraging "black farmers" to participate in the election process; (3) the plaintiffs' replacements were black[11]; (4) the flawed Townsend report; (5) the defendants' alleged failure to follow USDA policies and procedures; (6) the continuing course of multiple investigations; and (7) the alleged "shifting reasons" for the decision to remove the plaintiffs from office. After reviewing the record, the court has grave reservations about the evidence of racial animus alleged by the plaintiffs. However, in light of *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1331 (11th Cir. 1999), *cert. denied*, 2000 WL 122183 (April 3, 2000)(NO. 99-1247), even if the requisite conspiracy and racial animus were established, the plaintiffs do not survive summary judgment as they cannot establish the existence of a causal link between the conspiracy and the claimed racial animus and the plaintiffs' injury or deprivation.

In *Stimpson,* the plaintiff, a former police officer, sued the city of Tuscaloosa and its Civil Service Board under Title VII. The plaintiff filed her claim after the City recommended that she be terminated, and the Civil Service Board, after a three day hearing in which the plaintiff was represented by counsel and allowed to put on evidence and witnesses, unanimously decided to terminate her. At trial, the jury returned a verdict in favor of the

---

[11] As pointed out by the defendants, the plaintiffs' replacements were appointed pursuant to federal regulations. (Defendants' Reply p.14).

16

plaintiff. The Eleventh Circuit, however, vacated the district court's judgment and remanded with instructions to enter judgment for the defendants. *Id.* at 1332. According to the court, Stimpson's claim failed because the causal link between the discriminatory animus on the part of the City and her eventual termination was broken by the Board's hearing and independent decision to actually terminate her. *Id.* at 1331. In describing the procedural mechanisms available to Stimpson the court stated, "[i]t is hard to imagine any other procedural device that would ensure a more fair and independent decision than that of the Civil Service Board." *Id.* at 1332.

Although the court recognizes the existence of factual differences between this matter and *Stimpson*, the court finds that Chott and Stencel are similarly situated in most respects to the Civil Service Board. In particular, like the Civil Service Board's independent review of the City of Tuscaloosa's recommendation, Chott independently reviewed the state committee's decision before concluding that the plaintiffs should be removed and barred from future service with the FSA. Also, similar to *Stimpson*, the plaintiffs were afforded a full hearing before Chott, covering a full day. Moreover, through counsel, they were given a full and fair opportunity to testify, call witnesses, and submit evidence for the record. Lastly, the court notes its previous language that Chott and Stencel's decision "had the effect of curing the numerous defects in the lower administrative proceedings." (Memorandum of Opinion, April 7, 2000, p. 19).

Examining the alleged conduct of the defendants, with the exception of Stencel, each of their respective roles in the underlying events occurred prior to the independent hearing

17

and decision.[12] After carefully and thoroughly reviewing the record, the court determines that the Chott hearing provided the plaintiffs with an equitable and impartial procedural device that ensured a fair and independent decision. Accordingly, like the defendants in *Stimpson*, the court finds that any causal link between the defendants' animus and the alleged injury and deprivation suffered by McGee and Lashley is broken by Chott's independent hearing and recommendation in conjunction with Stencel's subsequent approval. Thus, as no causation exists, the defendants are entitled to summary judgment as to the plaintiffs' § 1985(3) claim.

Additionally, the court finds *Stimpson* instructive as to the plaintiffs' § 1985(1) claim. Although § 1985(1) does not have a racial animus requirement, *See Stern,* 547 F.2d at 1340, there still must exist a causal connection between the conspiracy and the injury suffered. *See e.g. Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). As already discussed, the court has determined that any causal relationship between the defendants' actions and the plaintiffs' removal was broken by the Chott hearing and recommendation. Accordingly, as the causation element has not been satisfied, under the principles espoused in *Stimpson,* the defendants are also entitled to summary judgment as to the plaintiffs' § 1985(1) claim.

## D.    Intracorporate Conspiracy Doctrine.

___

[12] As for Stencel, the court finds that, like the other defendants, any actions before the Chott hearing are insulated under the principles established in *Stimpson.* As for any post-hearing acts on the part of Stencel, the plaintiff has not pointed to any evidence which would indicate that such acts were part of a conspiracy. Most notably, there is no indication that a conspiracy between Chott and Stencel existed. Moreover, all the evidence presented indicates that Stencel's approval of the Chott decision was an independent act. Accordingly, the presence of only one actor prohibits the finding of the requisite meeting of the minds.

In light of two recent Eleventh Circuit opinions, the court is compelled to address whether the intracorporate conspiracy doctrine applies to this matter. *Dickerson v. Alachua County Comm'n.*, 200 F.3d 761 (11ᵗʰ Cir. 2000); *McAndrew v. Lockheed Martin Corporation*, 2000 WL 256149, at *8 (11ᵗʰ Cir. March 8, 2000).   Under the intracorporate conspiracy doctrine, "a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson,* 200 F.3d at 767. Therefore, just as an individual person cannot conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. *Id; See Chambliss v. Foote*, 562 F.2d 1015 (5ᵗʰ Cir. 1977), *aff'g*. 421 F.Supp 12, 15 (E.D. La. 1976). As articulated by the Seventh Circuit, "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Community Mental Health Ctr., Inc.,* 921 F.2d 108, 110 (7ᵗʰ Cir. 1991).

In *Dickerson,* the court considered whether the intracorporate conspiracy doctrine barred Dickerson, a county prison official, from bringing a § 1985(3) claim against a government entity and its employees.[13]   After reciting a brief history of the doctrine, the court looked at the particular actors involved in the alleged conspiracy.   The court noted that all the actors, as county employees, constituted a "single public entity." *Id.* Additionally, the court placed a similar degree of emphasis on the fact that the matter did not involve a single conspirator from outside the public entity, as well as the fact that the

_____

[13] In *Dickerson*, the plaintiff alleged that he was demoted as a result of a conspiracy among Caucasian jail officers and managers to shift the blame for a publicized prison escape to him and other African-American officers.

19

conduct which made up the alleged conspiracy was not criminal in nature. *Id.; See United States v. Hartley*, 678 F.2d 961, 972 (11th Cir. 1982) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981) (recognizing that "a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its own employees").[14] In conclusion, the County and its employees were considered a single legal entity that would not be capable of conspiring with itself. Accordingly, Dickerson was not able to establish that a civil conspiracy existed.[15] *Id.* at 768.

Shortly after its decision in *Dickerson*, the Eleventh Circuit further addressed the criminal conduct exception to the intracorporate doctrine in *McAndrew v. Lockheed Martin Corporation*, 2000 WL 256149, at *8 (11th Cir. March 8, 2000). In *McAndrew,* the plaintiff brought a claim pursuant to § 1985(2) against Lockheed, his former employer, and five senior management officials asserting that they had engaged in a conspiracy to prevent him from testifying before a federal grand jury and then retaliated against him by firing him after he testified.[16] The defendants maintained that as executives of the same legal entity, they

---

[14] As to the criminal exception issue, the court stated, "we do not have to decide whether this exception in criminal conspiracy cases should also apply in a civil conspiracy action because Dickerson does not allege any criminal conduct or that the conduct here could give rise to criminal charges of conspiracy against the county employees." *Dickerson,* 200 F.3d at 770.

[15] With its holding in *Dickerson*, the Eleventh Circuit joined eight other circuits in applying the intracorporate conspiracy doctrine to bar § 1985(3) claims against defendants for interference with civil rights.

[16] If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws. 42 U.S.C. § 1985(2).

could not conspire with one another and the intracorporate conspiracy doctrine barred the plaintiff from asserting a claim under the civil conspiracy statute. In rejecting the defendants' argument, the court noted that it was already established that the intracorporate conspiracy doctrine did not apply to criminal conspiracies arising under 18 U.S.C. § 371 of the federal criminal code.[17] *Id.* at *4. Because the underlying conspiratorial conduct at issue would be the same, regardless of whether a criminal conspiracy was alleged under § 371 or § 1985(2), the court found no reason to differentiate between the criminal and civil statutes where the alleged civil conspiracy had as its object conduct that was criminal. *Id.* at *6. "In either case, when a criminal conspiracy is alleged, the underlying conduct is of a sort that neither the corporate entity fiction nor the intracorporate conspiracy doctrine was intended or used to shield." *Id.* at 7. Accordingly, the court concluded that "the criminal conspiracy exception to the intracorporate conspiracy doctrine applies regardless of whether the criminal conspiracy arises under § 371 or under § 1985." *Id.* at 8.

The court is now faced with the, as yet, undecided question of whether the criminal exception to the intra corporate conspiracy doctrine applies to claims brought under § 1985(1) and (3). In *Dickerson*, the court refused to decide whether the exception in criminal conspiracy cases should also apply in a civil conspiracy action but suggested that it would apply the exception in appropriate circumstances. *See Dickerson*, 200 F.3d at 770. However, in *McAndrew*, decided two months after *Dickerson*, the court clearly established

---

[17] If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both. If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor. 18 U.S.C. § 371.

21

the application of the exception in civil conspiracy cases brought pursuant to § 1985(2). Given the *McAndrew* holding regarding claims brought under § 1985(2), the *Dickerson* court's suggestion that the exception would apply to § 1985(3) claims, and the reasoning of those courts, this court is hard pressed to say that the criminal conduct exception would not apply to any claim brought under § 1985, where the alleged purpose of the conspiracy is criminal in nature. This conclusion is bolstered when we consider that, like § 1985(2), §§ 1985(1) and (3) each has a criminal counterpart. Section 1985(1) is strikingly similar to 18 U.S.C. § 372,[18] while § 1985(3) parallels 18 U.S.C. § 241. *See Bray*, 506 U.S. at 275 (describing § 241 as the "criminal counterpart" of 1985(3)).[19]

A claim arising under 42 U.S.C. § 1985(1) "plainly describes" criminal conduct in violation of 18 U.S.C. § 372. Although it appears that the Eleventh Circuit has never addressed the intracorporate conspiracy doctrine in a criminal matter involving § 372, its prior rulings concerning the inapplicability of the doctrine in other criminal cases provides

_____

[18] If two or more persons in any State, Territory, Possession, or District conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined not more than $5,000 or imprisoned not more than six years, or both. 18 U.S.C. § 372.

[19] If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;

. . .

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death. 18 U.S.C. § 241.

22

sufficient guidance to determine that it would not apply in § 372 cases as well. *See United States v. Hartley*, 678 F.2d 961, 972 (11th Cir. 1982)(refusing to apply doctrine where defendants were charged with violating numerous statutes, including 18 U.S.C. § 371); *See also Doussay v. Gulf Coast Investment Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)(adopting criminal exception in case concerning 18 U.S.C. § 371). Following *McAndrew*, just as the intracorporate conspiracy doctrine would not shield the defendants from prosecution under § 372, the doctrine could not shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under 42 U.S.C. § 1985(1). *See McAndrew* at *1.

Despite the temptation to conclude that the rule in *McAndrew* results in the criminal conduct exception swallowing the intracorporate doctrine whole, *Dickerson* makes clear that there will be some § 1985(3) cases in which the doctrine will still apply.[20] The trick is to figure out when. Following the language of *Dickerson* and *McAndrew*, the relevant inquiry is whether the precise conduct alleged here would support a criminal prosecution against the defendants. The plaintiffs' § 1985(3) claims are essentially that the defendants conspired to deprive the plaintiffs of their equal protection rights and equal privileges and immunities under the law in that the plaintiffs were injured and deprived of their right or privilege as a citizen of the United States to hold an elected office. *See Flinn v. Gordon*, 775 F.2d 1551, 1554 (11th Cir. 1985)(plaintiff had a constitutional right to run for office and to hold office once elected).

---

[20] In *McAndrew*, the court expressly stated that its opinion that *Dickerson* remained the law in the Eleventh Circuit. *McAndrew*, at *4.

23

Although the court can find no occasion when this issue has been addressed by any court, a conspiracy to injure the plaintiffs in the exercise or enjoyment of the constitutional right to hold office once elected could, in the opinion of the court, give rise to and support criminal charges under 42 U.S.C. § 241. That being the case, the criminal conduct exception to the intracorporate conspiracy applies, and the defendants are not afforded this shield to protect them.

**E.    Administrative Procedure Act.**

In the previous Memorandum of Opinion, the court affirmed the agency's decision under 5 U.S.C. § 706(2)(A) (reviewing the decision under the arbitrary and capricious standard). However, whether the agency's decision infringed any right, power, privilege, or immunity provided plaintiffs under the Constitution of the United States remained unresolved. *See* 5 U.S.C. § 706(2)(B).[21] As stated in the court's earlier opinion, "[t]his question quite obviously cannot be decided on the basis of administrative record alone. Accordingly, the court will defer review of the agency decision under 5 U.S.C. § 706(2)(B) until further discovery has been completed." (Memorandum of Opinion, April 7, 1999, p. 12). Almost one year later, however, the record remains as it was when the court invited additional development of the record. In light of the failure to submit any additional evidence which would assist the court in deciding this question, the court finds that the plaintiff has not created a genuine issue of material fact to sustain a claim pursuant to 5 U.S.C. § 706(2)(B).

---

[21]Under § 706(2)(B), the court is to make an independent assessment of agency action and is not limited to evidence contained in the administrative record.

24

**V.    Conclusion.**

Whether a claim is brought under § 1985(1) or (3), it is clear that there must be a conspiracy. In the present matter, the plaintiff has failed to create a genuine issue of fact that any of the defendants were involved in a conspiracy.  Accordingly, all the remaining defendants are entitled to summary judgment. Additionally, in light of the decision of Chott and Stencel and the recent *Stimpson* decision, the court finds that the acts of the defendants are insulated, and the requisite causation element found in both §§ 1985(1) or (3) claims cannot be established.  Lastly, the court finds that the plaintiffs have not met their requisite burden under  5 U.S.C. § 706(2)(B).

In accord with this opinion, the defendants' motion for summary judgment will be granted and the action will be dismissed with prejudice. A separate order will be entered.

Done, this ___27th___ of April, 2000.

_____

EDWIN NELSON
UNITED STATES DISTRICT JUDGE

25